UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JAMES A. DALTON,

    Plaintiff,

v.                                        Case No. 1:11-cv-1274
                                           Hon. Hugh W. Brenneman, Jr.
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

## OPINION

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

        Plaintiff was born on October 6, 1963 (AR 156).[1] Plaintiff alleged a disability onset date of November 11, 2005 (AR 156). Plaintiff has a 9th grade education and had previous employment as a refrigerator assembler (AR 161, 164). He stopped working due to his conditions and because his "employer had relocated to Mexico" (AR 160). Plaintiff identified his disabling conditions as problems with his back, left leg, and shoulder, and seizures (AR 160). As a result of this condition, plaintiff claims that he "cannot lift/walk/stand", has no function in his shoulder and suffers black outs (AR 160). The ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on December 16, 2010 (AR 17-27). This decision, which was later

---

[1] Citations to the administrative record will be referenced as (AR "page #").

approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

2

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of November 1,

2005 and that he met the insured status requirements under the Act through December 31, 2010 (AR 19). Second, the ALJ found that through the date last insured, plaintiff had severe impairments of: back, shoulders, ankle, neck and leg pain; hepatitis C; live[r] function; diabetes; shortness of breath; and substance abuse (AR 19). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 19).

The ALJ decided at the fourth step that

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR404.1567(b) except the claimant has a poor ability to read, write and use numbers. He has the physical capacity to perform light and sedentary work. He can lift and carry 20 pounds. He can stand and walk 6 hours of an 8-hour day at a one interval. He can sit 6 hours of an 8-hour day at a one interval. He is able to climb, bend, stoop, crouch, crawl, kneel, push, pull, operate foot controls, and reach over shoulder occasionally. He is able to occasionally twist and nod the head. He should avoid extreme temperatures, humidity and wetness, rough and uneven surfaces, dangerous moving machinery, dust, fumes, and gasses. He is afflicted with substance abuse with no specific functional restrictions. He has a limited education. He is able to perform simple and repetitive tasks. The claimant is afflicted with symptomatology from a variety of sources that produces mild to moderate chronic pain, which is of sufficient severity as to be noticeable to him at all times; but that nonetheless, [h]e would be able to remain attentive and responsive in a work setting, and could carry out normal work assignments satisfactorily. The claimant takes medication for relief of his symptomatology, but that said medications do not preclude him from functioning at the light and sedentary level, as restricted, and that the individual would remain reasonably alert to perform required functions presented by his work setting.

(AR 20). The ALJ further found that plaintiff could not perform any past relevant work (AR 25).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light and sedentary jobs in the regional economy and national economy (AR 26-27). Specifically, plaintiff could perform the following jobs in the regional economy (defined as the State of Michigan): food preparation, light work (4,200 jobs); office cleaning, light work (8,400 jobs); and

4

machine operator, sedentary work (1,200 jobs) (AR 26-27). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from November 11, 2005 (the alleged onset date) through December 16, 2010 (the date of the decision) (AR 27).

## III. THE FEBRUARY 9, 2012 DECISION GRANTING BENEFITS

The day after plaintiff was denied benefits, he filed another claim for DIB. *See* ALJ's decision (Feb. 9, 2012) (docket no. 16-1). Plaintiff contends that the present action should be remanded for benefits or a new hearing "keeping in mind that another ALJ awarded benefits as of December 17, 2010 in [plaintiff's] subsequent application." Plaintiff's Brief at p. 13. In short, it appears that plaintiff wants this court to consider the ALJ's favorable decision entered in February 2012 as new evidence of disability for purposes of evaluating the ALJ's unfavorable decision entered in December 2010. Plaintiff's request misconstrues the court's role in evaluating new evidence. "[A] subsequent favorable decision itself, as opposed to the evidence supporting the subsequent decision, does not constitute new and material evidence under § 405(g)." *Allen v. Commissioner of Social Security*, 561 F.3d 646, 653 (6th Cir. 2009). Plaintiff cannot use the decision granting benefits in February 2012 as proof that he was disabled when the ALJ denied his application for benefits in December 2010. *See Asbury v. Commissioner of Social Security*, 83 Fed. Appx. 682, 685 (6th Cir. 2003) (a claimant cannot "bootstrap her success" on a subsequent application for benefits to change the burden of proof in the present proceedings "so as to require the Commissioner to find disability for the earlier period unless the agency can demonstrate a change in [his] condition").

## IV. ANALYSIS

Plaintiff's brief did not include a statement of errors as directed by the court's notice (docket no. 14). Rather, plaintiff presented a single argument as follows:

> **The treating physician provided a written document, as well as sworn testimony, indicating that plaintiff has severe non-exertional limitations. The Vocational Expert testified that those limitations eliminate all jobs. The ALJ disregarded the physician's written statement and sworn testimony in violation of Social Security law. This error authorizes a remand for an award of benefits.**

Plaintiff contends that the ALJ disregarded opinions from his primary care physician, Leonard Van Gelder, M.D, dated August 10 and September 15, 2010.[2] A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of

---

[2] The ALJ sometimes refers to the doctor as "Dr. Gelder."

individual examinations, such as consultative examinations or brief hospitalizations"). If a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case," then the agency will give the opinion controlling weight. 20 C.F.R. § 404.1527(c)(2) . An ALJ, however, is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994).

Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

On August 10, 2010, Dr. Van Gelder filled out a "Physical Capacities Assessment" form which was provided by plaintiff's attorney (AR 261-62). This form does not refer to any clinical studies or treatment notes. The form consists of three sets of questions. The first set, "Physical capacities for work-related activities," contains 14 activities, with three options for the physician to "check off", i.e., "never", "sometimes" and "frequently" (AR 261). The second set, "Impact of medical conditions on competitive, full-time employment," requires the physician to check off a "yes" or "no" answer to six different activities (AR 262). The third set, "Patient's

7

current conditions and prognosis," requires the physician to choose from four options, i.e., "permanent", "temporary", "progressive" and "stable" (AR 262).

The ALJ addressed the doctor's written opinions as follows:

> On August 10, 2010, the claimant's, primary care physician, Leonard Van Gelder, M.D. filled out a Physical Capacities Assessment supplied by the claimant's attorney. Dr. Gelder indicated that the claimant could sit continuously, up to 2 hours, or occasionally up to 6 hours. The claimant could stand continuously up to 8 hours. The claimant could lift up to 10 pounds continuously, up to 2 hours, or occasionally up to 6 hours. The claimant can bend, squat, crawl, kneel, reach over shoulder, grasp (right side), grasp (left side), push, pull, stair climb and climb continuously, up to 2 hours, or occasionally up to 6 hours. Dr. Gelder indicated that the claimant would have severe limitations as to pace and concentration, would need a sit-stand option, as symptoms dictate, would likely miss 3 or more days per month of work and would likely be tardy 3 or more days per month, and would need breaks from work as symptoms dictate. The claimant is best suited for part-time work, as opposed to full-time work. Finally, Dr. Gelder added, the combined effect of these impairments on the claimant's activities is greater than the effect of each impairment considered separately (Exhibit 5F). 20 CFR 1527 provides "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we will apply the [following] factors . . . (i) length of treatment relationship and the frequency of the examination (ii) Nature and extent of the treatment relationship . . . (3) Supportability . . . . (4) Consistency (5) Specialization . . . . (6) Other factors. When we consider how much weight to give a medical opinion, we will also consider any factors your or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding [of] disability programs . . ." See also 20 CFR 416.927 and Watkins v Barnhart, 350 F.3d 1297 (10th Cir. 2003).
>
> \*   \*   \*
>
> As for the opinion evidence, the undersigned gives little weight to [the] Physical Capacities Assessment filled out by Dr. Gelder. This form is not a Social Security form. It was created and supplied by the claimant's attorney. The definitions on the form do not adhere to Social Security definitions.

8

(AR 23-25).[3]

Then, on September 15, 2010, Dr. Van Gelder gave a sworn statement under questioning by plaintiff's counsel (AR 277-84). The doctor's sworn testimony identifies plaintiff's conditions as severe impairments, that the conditions were progressive (rather than stable), that plaintiff could experience flare-ups, and that he was more suited to part-time work rather than full-time work due to his pain and other symptoms (AR 277-84). The ALJ evaluated the doctor's testimony as follows:

---

[3] The court notes that the evidentiary value of the various "multiple choice" medical opinion forms submitted by claimants' physicians in Social Security disability cases have been questioned in recent cases. As one court observed:

> It does not appear that the Sixth Circuit has directly addressed the weight afforded to check-box forms filled out by treating physicians, however, other circuit courts and courts within the Sixth Circuit have cast doubt on the usefulness of such "checkmark" or "multiple choice" forms when unaccompanied by explanation or unsupported by physician's notes. *See Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir.2010) ("Although by itself a check-box form might be weak evidence, the form takes on greater significance when it is supported by medical records."); *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir.2004) (upholding the ALJ's discounting of a treating physician's opinion in check-list form because "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole. . . or by objective medical findings"); *Mason v. Shalala*, 994 F.2d 1058, 1065–66 (3d Cir.1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best . . . where these so-called reports are unaccompanied by thorough written reports, their reliability is suspect.") (internal quotations and citation omitted); *Boley v. Astrue*, No. 11–10896, 2012 WL 680393, at *18 (E.D.Mich. Feb.10, 2012) ("Dr. Ulano merely checked off boxes on the form to indicate that [claimant] satisfied the requirements for listing § 12.05 'personality disorder' and almost satisfied the listing for § 12.04 'affective disorder'. . . [but] did not support any of these findings with any evidence in her treating record or any new observations from more recent treatments."); *Ahee v. Comm'r of Soc. Sec.*, No. 07–CV–12071, 2008 WL 4377652, at *4 (E.D.Mich. Sept.22, 2008) ("The ALJ has discretion to reject a medical opinion, here a form, when the opinion is not supported by objective medical evidence.").

*Doyle v. Commissioner of Social Security*, No. 2:11-cv-371, 2012 WL 4829434 at *9 (Report and Recommendation) (Sept. 12, 2012), adopted (Oct. 10, 2012 E.D. Tenn.).

9

> On September 15, 2010, Dr. Gelder provided statements under oath regarding the claimant. This was provided at the request of the claimant's attorney. Dr. Gelder stated that he had been seeing the claimant for over one year. The claimant was treated for hepatitis C, diabetes, hyperlipidemia, weight gain, a previous motor cycle accident, a left leg injury, hip injury, right shoulder injury. He also has COPD, including also a right shoulder rotator cuff tear. Dr. Gelder indicated that the each of the claimant's conditions cause a limitation that would have more than a minimal effect on the claimant's ability to do basic work activities. Further, Dr. Gelder indicated that these conditions were permanent and are expected to last more than 12 months (Exhibit 7F).

(AR 24).

> The ALJ further evaluated Dr. Van Gelder's opinions as follows:
>
> Although the claimant has received treatment for the allegedly disabling impairment(s), that treatment has been routine and/or conservative in nature.
>
> The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality, which should be mentioned, is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.
>
> Further, the record reflects that the claimant underwent surgery to repair the right shoulder on July 11, 2007. However, the claimant's medical records also show a lack of follow-up related to the surgery. According to the claimant's medical records, the claimant did not seek treatment until June 23, 2009, when he sought treatment from Dr. Gelder. If the claimant were in the constant and disabling painful condition as alleged, it is reasonable to assume the claimant would exhaust every means possible to obtain relief of that pain. However, the record clearly shows a two-year gap of no medical treatment.

(AR 25).

The ALJ gave good reasons for discounting Dr. Van Gelder's opinions. *See Wilson*, 378 F.3d at 545. Furthermore, as defendant points out, the doctor's treatment notes from June 23, 2009 through August 10, 2010 (AR 263-76), "contain either unremarkable or no clinical findings"

10

and "do not even demonstrate that the doctor prescribed any medication or other treatment." *See* Defendant's Brief at p. 16. Accordingly, plaintiff's claim of error will be denied.

## V. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision is affirmed pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will issue.

Dated:  March 19, 2013                                         /s/ Hugh W. Brenneman, Jr.
                                                                              HUGH W. BRENNEMAN, JR.
                                                                              United States Magistrate Judge